## Liberty Township v. Ski Roundtop, Inc.

162

*Gary E. Hartman,* for plaintiff.
*Wentworth D. Vedder,* for defendant.
*F. Joseph Larkin,* for Borough of Carroll Valley, additional defendant.

MacPHAIL, *P.J.,* March 29, 1977 — This is an action of assumpsit which was tried without a jury. The suit is based upon a document (Plaintiff's exhibit 1) dated and executed on June 24, 1974, by Ski Roundtop, Inc., which obligated that corporation to pay Liberty Township five cents on each $1 admission fee for the period of time ending

March 31, 1975, which corresponded with the end of Ski Roundtop's fiscal year. The document also obligated Ski Roundtop to pay to plaintiff a minimum of $4,000 if the number of admissions was less than that which would require Ski Roundtop to pay $4,000 to plaintiff at five cents per admission.

Witnesses for plaintiff testified that this document was presented to the board of supervisors at a regular meeting thereof on July 2, 1974. At the previous meeting of the board of supervisors, the question of Ski Roundtop's liability under the township's amusement tax ordinance was discussed. Plaintiff's exhibit 1 was then prepared and presented to the board for acceptance in lieu of literal compliance by Ski Roundtop with the provisions of the township's amusement tax ordinance. On July 2, 1974, the township adopted a resolution imposing a tax liability upon Ski Roundtop in accord with the provisions of plaintiff's exhibit 1. At the time the negotiations between the township and Ski Roundtop were in progress, proceedings had been undertaken to incorporate a portion of Liberty Township as the Borough of Carroll Valley. The lands of Ski Roundtop are located within the boundaries of the new borough. The incorporation proceedings culminated with an order of court entered October 24, 1974, approving the creation of the borough. The borough came into existence formally on January 6, 1975.

On January 22, 1975, Ski Roundtop made a proposal to the Borough of Carroll Valley identical to the one they had submitted to Liberty Township, except that that proposal did set forth an additional paragraph which stated that "any payments required to the Borough of Carroll Valley as

hereinbefore set forth shall be reduced to the extent the company is obligated to make payments to the Township of Liberty, Adams County, Pennsylvania." The proposal expired March 31, 1975 (Ski Roundtop's exhibit A).

On July 14, 1975, plaintiff and the Borough of Carroll Valley executed a "receipt and release" whereby the two municipalities adjusted their assets and indebtedness pursuant to the provisions of the Act of February 1, 1966, P.L. (1965) 1656, as amended, 53 P.S. §45213. In that document, it was stated that the Borough of Carroll Valley would accept a payment from the township in the sum of $14,000 as full satisfaction of the obligation of the township to the borough under the provisions of the statute. While it appears that the borough was aware of plaintiff's exhibit 1, the receipt and release contains no language whatsoever concerning that document.

Between June 24, 1974, and January 6, 1975, Ski Roundtop collected admission fees of $5,864.

Although plaintiff's complaint seeks judgment against Ski Roundtop for the sum of $4,000, plus interest and costs, at trial plaintiffs claimed only $2,700, which was calculated by pro-rating $4,000 over the period of time extending from July 2, 1974, to January 6, 1975.

Defendants contend that plaintiff's exhibit 1 speaks for itself and that, if any sum is due plaintiff, it should be limited to five percent of the admissions actually collected by Ski Roundtop prior to January 6, 1975. In addition, Ski Roundtop argues that plaintiff's exhibit 1 is a nullity because it was based upon the continuing authority of the township to tax. Since that authority expired prior to March 31, 1975, it argues that it has no

liability to the township, especially in view of the fact that it has paid the sum of $4,000 to the Borough of Carroll Valley. The Borough of Carroll Valley contends that there was no contract between the township and Ski Roundtop because there was no consideration and plaintiff's exhibit 1 was never executed by plaintiff. The borough also contends that if there was a valid obligation from Ski Roundtop to the township, that obligation constituted an asset of the township which the borough acquired in the "receipt and release" executed July 14, 1975. Ski Roundtop contends that by virtue of its agreement with the borough, the borough is liable to plaintiff because Ski Roundtop has paid the borough the sum of $4,000 and its agreement with the borough calls for a credit with respect to any sum paid by Ski Roundtop to the township. The borough denies any liability to Ski Roundtop on the basis of that agreement because they say the only credit to which Ski Roundtop would be entitled would be for payments made by Ski Roundtop on tax obligations accrued by it after January 22, 1975.

On hindsight (which is not always perfect), it seems apparent that the parties to this litigation could have avoided this litigation entirely by specific reference to the obligation of Ski Roundtop to the township as set forth in plaintiff's exhibit 1. There can be no doubt that all of the parties were aware of the problem, yet the only reference to it is the credit provision in Ski Roundtop's exhibit A.

It is clear to us that plaintiff's exhibit 1 and the resolution adopted by plaintiff on July 2, 1974, constitute a valid and enforceable contract, the consideration being the forbearance of plaintiff to enforce the literal provisions of its amusement tax

ordinance. But for the incorporation of the Borough of Carroll Valley, Ski Roundtop would have been obligated to pay plaintiff five percent of each dollar of admissions collected between July 2, 1974, and March 31, 1975. When the Borough of Carroll Valley was incorporated and came into legal existence on January 6, 1975, the authority of the township to tax Ski Roundtop ceased. However, that contract did not become totally unenforceable by virtue of the incorporation of the borough. Rather, after a careful consideration of all the circumstances surrounding the negotiation of Ski Roundtop's tax liability to the township, we conclude that January 6, 1975, was the termination date of that contract by force of law. While we understand the township's contention that they are entitled to a pro rata share of the $4,000 guarantee made by Ski Roundtop, the literal language of the proposal which the township seeks to enforce was not a contract for a specific term of time but rather an obligation to be calculated by the mathematical result of multiplying the number of $1 admissions by five percent. If it was the intention of the township to construe the obligation otherwise, it should have been so stated, especially in view of the fact that the township was aware or should have been aware of the incorporation proceedings contemplated by the borough.

It is certainly true that as of the date of incorporation of the borough, the obligation of Ski Roundtop to the township to pay it a sum of money calculated by multiplying the number of $1 admissions by five percent was at least a contingent asset of the township. However, it is clear to us that that asset along with all of the other township assets was "adjusted" by the payment of $14,000 in cash

by the township to the borough. If the borough was also to receive the benefit of Ski Roundtop's obligation to the township, that asset should have been assigned to the borough and should have been specifically included, and mentioned, in the transfer of assets by the township to the borough. Since this was not done, we hold that the township retained the beneficial ownership of the asset.

Finally, we have little difficulty concluding that Ski Roundtop and the borough intended that the total amount the borough received from Ski Roundtop pursuant to the proposal dated January 22, 1975, would be reduced by *any* amount Ski Roundtop became obligated to pay the township by virtue of the agreement between the township and Ski Roundtop which agreement, we repeat, was well known to both the borough and Ski Roundtop.

## CONCLUSIONS OF LAW

1. By virtue of the offer of Ski Roundtop, as set forth in plaintiff's exhibit 1, which offer was accepted by the township on July 2, 1974, Ski Roundtop became legally bound to the township according to the terms of plaintiff's exhibit 1.

2. The contract between Ski Roundtop and the township became legally unenforceable after January 6, 1975, the date when the municipality of the Borough of Carroll Valley came into being with the power to tax.

3. The contract between the township and Ski Roundtop is unaffected by the adjustment of indebtedness negotiated between the township and the Borough of Carroll Valley.

4. Ski Roundtop is obligated to pay the township five percent of the admissions collected by Ski Roundtop up to January 6, 1975.

5. The Borough of Carroll Valley is obligated to pay Ski Roundtop a sum equal to that which Ski Roundtop must pay to the township.

## ORDER OF COURT

And now, March 29, 1977, it is ordered that:

1. Judgment be entered in favor of Liberty Township and against Ski Roundtop, Inc., in the sum of $293.20, with interest thereon at six percent per annum from March 31, 1975, to the date of payment.

2. Judgment be entered in favor of Ski Roundtop, Inc. and against the Borough of Carroll Valley in the sum of $293.20, with interest thereon at the rate of six percent per annum from March 31, 1975, to the date of payment.

3. The costs of this proceeding be equally divided between Ski Roundtop, Inc. and the Borough of Carroll Valley.

If no exceptions are filed to this decision within 20 days after notice of the filing hereof has been given by the prothonotary to the parties, the prothonotary shall, on praecipe, enter final judgment hereon as provided by Pa. R.C.P. 1038.